the wind, and it was imperative that she should receive assistance, though I do not think that there is any reason to suppose that she would not have continued to make as good weather of it for several days after the 2d of March as she had done for 13 days before.

Mr. Burlingham, for salvors.

Mr. Kirlin, for owners.

HOUGH, District Judge (after stating the facts as above). In my opinion these salvors encountered no dangers other than those incurred by all who go to sea; nor was the Norwood herself in any greater peril than she would have been upon her contemplated voyage; neither was any remarkable skill or extreme labor required on the salvors' part, except from the master of the Norwood, whose watchfulness exceeded that which would have been required of him in the ordinary prosecution of his voyage, and is to be commended.

The peril from which the Sun was rescued was actual, but not imminently extreme. It is observable that the comparative values of the Sun and the Norwood show a great discrepancy. A smaller vessel would have done the work just as well, but, as was said in La Hesbaye (D. C.) 71 Fed. 743, this does not much affect the question, as no other vessel was at hand. The Norwood is entitled to a generous reward, but not so large as she should receive had she herself been the towing vessel; for it is upon the towing vessel that the greater responsibility rests, and that vessel also runs the greater chance of injury to hull and machinery. The principal considerations, therefore, are the degree of peril from which the Sun was rescued, the value of the salved property, and the amount of time consumed in the service.

Upon a comparison of La Hesbaye, supra, The Wisconsin (D. C.) 30 Fed. 879, and The Alaska (D. C.) 23 Fed. 597, I think a salvage award of $13,500 will be sufficient. For this amount, with $672.38 expenses and costs, libelant may take a decree. Of this award let the master, officers, and crew of the Norwood receive one-fourth in proportion to their wages, the Norwood's master, however, getting a double share, his extra award to come out of the owner's three-fourths.

---

In re HALE.

(District Court, D. Connecticut. May 6, 1908.)

No. 2,014.

BANKRUPTCY—JUDGMENT—EXECUTION—STAY.

A bankrupt had been agent for M. & Co. for the sale of coal, under an arrangement by which the bankrupt agreed to pay M. & Co. $6.20 for each ton sold; he to retain for his services the balance received above such sum, and the title to the coal to remain in M. & Co. until sold. The bankrupt not having accounted to M. & Co. for some of the coal, they recovered judgment against him in conversion in the state court. *Held*, that such judgment was a provable debt in the bankruptcy proceedings. from which the bankrupt would be released by a discharge, and that he was therefore entitled to a stay of execution until 12 months after adjudication, or until the bankrupt's application for a discharge shall have been determined. if made within that time.

In Bankruptcy. On petition for a stay of execution on a judgment of the state court. Granted.

Frank H. Foss, for bankrupt.
James A. Marr, for Frank Miller & Co.

PLATT, District Judge. The bankrupt was a coal dealer in Hartford, and it appears that prior to adjudication he entered into a contract with Frank Miller & Co., of Bridgeport, to act as their agent to sell their coal. The title to the coal was to remain in said Miller & Co., and the bankrupt was to pay them $6.20 for each ton of coal which he sold and obtained pay for, retaining as commission any balance paid to him above the $6.20 per ton for the coal delivered into the possession of the bankrupt in, Hartford. Some of the coal he sold the bankrupt paid for, and some he did not. Said Miller & Co. sued the bankrupt in the proper state court, in trover, claiming that he had converted the money received to his own use. The bankrupt entered a general denial, and upon that issue the jury returned a verdict for Miller & Co., and judgment has been entered thereon, but no execution issued. The bankrupt prays that said action in the state court shall be stayed until 12 months after the adjudication, or, if within that time the said bankrupt shall apply for a discharge, then until the question of such discharge shall be determined, and that the said Frank Miller & Co., their attorneys, agents, and servants, shall be during that time prohibited from arresting said bankrupt on execution of judgment in said suit.

If the claim in question is a provable debt, and of such a nature that it would be released by a discharge in bankruptcy, the prayer ought to be granted. It is certainly a provable debt. Would it be released by a discharge? The facts seem to me to present a plain case of an ordinary mercantile transaction, wherein one acts for another in the sale of any commodity. In all such cases the title to the property remains in the principal, and it is the duty of the agent to account for his sales. His profit lies in what he gets above the agreed amount which he must turn over to his principal. If he fails to account, he can be sued in assumpsit or for a conversion. It is necessary to be too technical if one tries to distinguish this case from the common ones with which the country teems. It must be assumed that the contractual relation was one which required the bankrupt to separate the money received by him for each ton of coal into two piles, one containing $6.20 multiplied by the number of tons sold, and to hasten to his principal with that amount. Commission business is not done in that way, or in any way at all like that, as I understand it.

I think the case of Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, is precisely in point. That was a broker's case; but it is beyond my capacity to draw a logical line between agents, brokers, factors, auctioneers, conditional vendees, and the like. The facts before us do not impute positive fraud, involving moral turpi-

tude or intentional wrong. There was neither a technical trust at the beginning of the contractual relation nor moral turpitude in its breach.

The right to a stay, as prayed for, is clear. Let it be issued.

---

MOTLEY, GREEN & CO. v. DETROIT STEEL & SPRING CO. et al.

(Circuit Court, S. D. New York. May 9, 1908.)

1. ACTION—NATURE—HOW DETERMINED.

The complaint in an action determines whether the action is at law or in equity; it being immaterial whether the complaining party is described as plaintiff or as complainant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 143.]

2. SAME.

An action, wherein complainant alleges the execution of a conspiracy to break a contract made with him by one of the defendants, and claims money damages only, is an action at law, and not a suit in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 124–143.]

3. CONSPIRACY—INJURY TO PROPERTY RIGHTS—CIVIL LIABILITY.

Though individuals or corporations may conspire with impunity if they do nothing to execute the conspiracy, if they conspire to do a wrong to the person or property or property rights of a third person, and execute the conspiracy to such person's injury, they are liable jointly or severally.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 4, 14.]

4. SAME—SOLVENCY OF DEFENDANTS—MATERIALITY.

It is immaterial to one's right to recover, in one action, damages for the execution of a conspiracy to break a contract made by one of the defendants, whether defendants are solvent.

5. SAME—MALICE.

The existence of malice on defendants' part is not essential to their liability to complainant for executing a conspiracy to break a contract, made with complainant by one of the defendants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 3.]

6. SAME.

That complainant in good faith entered upon performance of a contract with defendant company, expending large sums of money legitimately in obtaining customers for defendant's product, it being agreed complainant should receive large commissions; that defendant organized codefendant company, the officers of the two being in the main identical; that both companies well knew of the contract; that the companies conspired to injure complainant and deprive it of the benefits of the contract and to prevent performance thereof by making a pretended sale of defendant's properties and business to codefendant; that they conspired that codefendant should pretend to run the business, refusing to recognize complainant's rights; that they further conspired to make codefendant a mere sales agent for defendant, giving to it the rights, etc., previously enjoyed by complainant; that the companies conspired to break complainant's contract; that the conspiracy was executed; and that complainant was thereby damaged by the loss of commissions, money expended in advertising, etc.—shows complainant's right to recover against the companies.

On Demurrers to Complaint.